** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
|---|---|---|---|---|
| June 28, 2019 at 11:31:27 AM EDT | 18006817081 | 358 | 7 | Received |

To: Page 1 of 7     2019-06-28 15:25:41 (GMT)     18006817081 From: John Nimmer

# FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | 18592332604 |
| FROM | John Nimmer |
| DATE | 2019-06-28 15:25:06 GMT |
| RE | In Re: Giga Ent. Media, 5:2019bk51291 |

## COVER MESSAGE

Chief Judge Tracey N. Wise
Via facsimile 859-233-2604

Re: June 27, 2019 Bankruptcy Petition (In Re: Giga Entertainment Media, 5:2019bk51291)

Dear Judge Wise:

I am one of Giga Entertainment Media's ("GEM") creditors. GEM knowingly misrepresented in paragraph 11 of its Bankruptcy Petition "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district." The Petition was signed under oath by both James Massa (former CEO/current "director of administration/director), and Robert Morello (chairman of the board). Upon information and belief the June 26, 2019 "Resolution of Board of Directors" at the end of the Petition, which was signed only by Dr. Morello, did not occur. See nonexclusively James Massa's June 11, 2019 email to me referencing an upcoming July 2, 2019 shareholder vote to determine whether GEM may file for bankruptcy protection.

GEM's "domicile, principal place of business, or principal assets" were not in the Eastern District of Kentucky "180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district". GEM's home office has continuously nbeen in New York since its creation in 2012. Nonexclusively:
   A. The Petition was filed on June 28, 2019. 180 days prior was December 31, 2018. GEM settled its claim with me on April 16, 2019 (73 days prior to the Petition). In the settlement documents where GEM represented its domicile was then in New York City are attached. See also Massa's April 16, 2019 email to me listing GEM's home office as 315 W. 36th Street, 2nd Floor, New York, NY 10018.
   B. As of today the contact page for GEM's website gigaentertainmentmediasoftware.com lists its home office as 990 Stewart Ave

      Suite 450A, Garden City New York, 11530, not in Kentucky. The only person with current ties to the Eastern District of Kentucky is James Massa (his residence).

C. GEM is a Nevada corporation. Regarding GEM's domicile as of today the Nevada Secretary of State has four entries for officers and directors: Eddie Huey (secretary—315 W. 36th Street, 2nd Floor, New York, NY 10018); James Massa (president—723 Central Avenue, Lexington, KY 40502); James Massa (treasurer, 315 W. 36th Street, 2nd Floor, New York, NY 10018); and Bob Morello (director--315 W. 36th Street, 2nd Floor, New York, NY 10018).

I do not have the means to litigate this in Kentucky. However, under Rule 1014(a)(2) "If a petition is filed in an improper district, the court, . . . on its own motion, and after hearing on notice to the petitioners, the United States trustee, . . . may dismiss the case. . . . " I believe it should do so.

Sincerely,

S/ John C. Nimmer
1429 South Grandview Avenue, Suite 8
Papillion, Nebraska 68046-5783
1-402-345-8040
Fax 1-800-681-7081
Law@Nimmer.OmhCoxmail.com

Cc: Taft A. McKinstry, Fowler Bell PLLC (debtor's attorney) via email Bankruptcy@FowlerLaw.com
     James D. Lyon (trustee) via email jdlyonlaw@aol.com

This communication, along with any attachments, is covered by US federal and state law governing electronic communications, and may contain confidential information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message. Thank you.

**From:** James Massa [mailto:jmassa@giganettv.com]
**Sent:** Tuesday, June 11, 2019 10:14 AM
**To:** law@nimmer.omhcoxmail.com
**Subject:** Giga (GEM) CEO has resigned - other info included Re: Nimmer v. GEM

Thank you for your e-mail.

As of 5/31/2019, I have resigned as CEO of Giga Entertainment Media, Inc.

I am still a Board Director.

Bob Morello is still Chairman of the Board.

Due to lack of funding GEM has ceased operations at this time pending its annual shareholder meeting to occur on July 2, 2019.

I have been asked to serve as Vice President of Administration until that meeting. GEM's decision to renew operations or file Chapter 7 bankruptcy will be determined at that meeting.

There are no other employees active and working at GEM at this time.

Due to the lack of personnel and focus of my role at this time, I will be responding only to those matters which relate to the July 2nd shareholder meeting or agenda items associated with such.

best regards,

James Massa
Board Director
VP of Administration
Giga Entertainment Media, Inc.

**From:** jmassa@giganettv.com [mailto:jmassa@giganettv.com]
**Sent:** Tuesday, April 16, 2019 2:17 PM
**To:** 'Nimmer'
**Subject:** Nimmer_GEM Settlement Agreement signed by GEM attached


John,
Please find attached the signed agreement and promissory note.
Please send a countersigned agreement via e-mail and PDF.
Please forward the DBC shares as agreed.

I'll send the originals upon receipt of the countersigned agreement via e-mail PDF.

Best regards,


James Massa
Chief Executive Officer

**GEM**

315 W. 36th Street, 2nd Floor
New York, NY 10018
(516) 305-4411 (o) | (202) 780-9323 (m)
www.gigaentertainmentmedia.com

**From:** Nimmer <Law@Nimmer.OmhCoxmail.com>
**Sent:** Tuesday, April 16, 2019 11:52 AM
**To:** Jmassa@giganettv.com
**Subject:** Acceptance of GEM's 4/2/19 Offer

Thanks James. Though you may if you wish to I do not require the attached settlement agreement or note to be notarized. Also while you may mail the original if you wish to, a pdf copy of each is fine.

**From:** jmassa@giganettv.com [mailto:jmassa@giganettv.com]
**Sent:** Tuesday, April 16, 2019 10:38 AM
**To:** 'Nimmer'
**Subject:** RE: Acceptance of GEM's 4/2/19 Offer

John,
Thank you.
The Board approved as expected.
I'll run down to the notary and get the updated agreement notarized.

I'll send an original to you via mail.

Should have this done by COB.

Best regards,


James Massa
Chief Executive Officer

GEM

315 W. 36th Street, 2nd Floor
New York, NY 10018
(516) 305-4411 (o) | (202) 780-9323 (m)
www.gigaentertainmentmedia.com

GIGA ENTERTAINMENT MEDIA—NIMMER SETTLEMENT AGREEMENT

Whereas, Giga Entertainment Media, Inc. ("GEM") is a Nevada corporation created on May 24, 2012 with its home office in New York City, New York County, New York.

Whereas, John C. Nimmer ("Nimmer") is an individual residing in Papillion, Sarpy County, New York.

Whereas, Digital Broadcast Corporation ("DBC") was formed in 1995 and is a dissolved Delaware corporation with its former home office being in Nassau County, New York.

Whereas, under a June 1, 1999 Agreement, as amended (the "Agreement"), for legal services rendered by Nimmer to DBC, DBC issued to Nimmer from June 1, 1999 – November 30, 2001 635,000 DBC common shares, 50,000 of which were transferred to Nimmer's ex-wife pursuant to their March 2002 dissolution, and 500 to a friend of Nimmer's in 2008. Both transfers were agreed to by DBC. Nimmer presently owns 584,500 DBC common shares evidenced by certificates DB1125 dated August 23, 2001 for 495,000 shares, and DB1965 dated June 19, 2008 for 89,500 shares.

Whereas, the Agreement provided that within 6 months of the termination of the relationship between DBC and Nimmer, DBC was to repurchase Nimmer's DBC common shares. Nimmer provided uninterrupted legal services for DBC, then for GEM, through November 12, 2015, at which time Nimmer resigned. Though disputed by GEM, it is Nimmer's position GEM is the successor to DBC and therefore was required on May 12, 2016 to repurchase Nimmer's DBC shares under the Agreement. GEM did not repurchase Nimmer's DBC common shares on May 12, 2016 or any time thereafter. Since then Nimmer has pursued his claim against GEM.

Wherefore, to finally and fully resolve Nimmer's share repurchase claim, and all other matters between them, the parties agree as follows:

1. GEM shall pay to Nimmer $700,000 as follows: $5000 earnest money (which has already been paid by GEM and received by Nimmer), $10,000/month on the 1st of each month for 69 months (June 2019 – February 2025), and $5000 March 1, 2025. All payments shall be by bank wire to such account as Nimmer may designate. Upon both parties signing this Settlement Agreement GEM shall execute a Promissory Note consistent with this Settlement Agreement. The responsibility for capital gains tax on these payments, if any, shall be Nimmer's.
2. Upon both parties signing this Settlement Agreement and GEM signing the Promissory Note, Nimmer shall surrender within 7 calendar days his DBC stock certificates to GEM's CEO James Massa by the US postal service or other reliable carrier, return receipt requested, to 315 W 36th Street, 2nd Floor, New York, NY 10018 (unless Mr. Massa designates another address). By doing so Nimmer relinquishes any claim to own shares of DBC or GEM.

1

3. At any time GEM may elect to pay in cash the remaining balance due under Section 1 without a prepayment penalty.
4. If any payment under Section 1 is 15 days late, Nimmer may send to GEM by email or any other reliable means a notice of default and require for GEM to cure the default that the late payment to be made by the first of the next month along with the next monthly payment. Unless Nimmer agrees in writing otherwise, if GEM fails to cure the default as prescribed the balance shall be automatically accelerated to the full amount then remaining under Section 1.
5. The filing of a voluntary or involuntary bankruptcy petition with GEM as the debtor will immediately accelerate the total amount remaining under Section 1.
6. This Settlement Agreement shall be construed under the laws of the State of Nebraska. GEM consents to personal jurisdiction in Nebraska for purposes of enforcement of this Settlement Agreement.
7. The parties (and their agents) hereby release each other from any and all claims against the other party (including the other party's agents) they may have against each other as of the date of this Settlement Agreement, whether presently known or unknown.
8. Neither party (including its agents) shall disparage the other party (including its agents) publicly or privately to third persons.
9. Neither party (including its agents) shall complain about any conduct of the other party (including its agents) whether known or unknown up through the date of this Settlement Agreement to any civil, criminal, administrative, or regulatory governmental agency.
10. This Settlement Agreement shall not be binding and effective until both parties have signed it, and GEM has signed the Promissory Note. Each provision of this Settlement Agreement shall be considered severable and if any provision or provisions of this Settlement Agreement are determined to be invalid and contrary to any existing or future law for any reason, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid. GEM's signatory represents GEM's board of directors authorized him to sign this Agreement on behalf of GEM.

X _____       Dated this 16th day of April, 2019.
Giga Entertainment Media, Inc.
By its CEO James Massa

X _____       Dated this 16th day of April, 2019.
John C. Nimmer

2

## PROMISSORY NOTE

For value received, the undersigned ("Maker") hereby promises to pay to the order of John C. Nimmer or other holder in due course ("Payee"), the principal sum of $700,000 (seven hundred thousand US dollars) pursuant to the terms and conditions set forth herein.

The principal amount of this Promissory Note (the "Note") shall be due and payable for receipt by the Payee as follows: $5000 prepayment which has been paid by the Maker and received by the Payee; $10,000/month on the 1st of each month for 69 months (June 2019 – February 2025), and $5000 March 1, 2025. All payments shall be by bank wire to such account as may be designated from time to time by the Payee.

If any payment is 15 or more days late, Payee may send to Maker by email or other reliable means a notice of default, at which time Maker may cure the default by paying for receipt by the Payee the late payment along with the next regular monthly payment on or before the 1st day of the next calendar month. If Maker fails to do so the then remaining outstanding principal amount due will be automatically accelerated unless Payee otherwise agrees in writing. The filing of a voluntary or involuntary bankruptcy petition by or for the Maker will immediately and automatically accelerate the then remaining outstanding principal amount due.

This Note shall not bear interest unless suit thereon is successful, then the post judgment interest rate shall apply. The Maker shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. No delay or omission on part of the holder of this Note in exercising any right hereunder shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The rights and remedies of the Payee shall be cumulative and may be pursued singly, successively, or together, in the sole discretion of the Payee.

All parties to this Note including Maker and any sureties, endorsers, and guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal and all other sums due under this Note notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

This Note shall be governed by, and construed in accordance with, the laws of the State of Nebraska. Suit thereon may only be had in Nebraska, and for purposes of such suit Maker hereby consents to personal jurisdiction over the Maker in Nebraska. In the event Payee brings suit hereon the Maker agrees to pay, in addition to the then outstanding principal hereunder, reasonable attorneys' fees plus court costs.

All of the foregoing is the promise of Maker and shall bind Maker and Maker's successors, heirs and assigns; provided, however, that Maker may not assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the holder of this Note.

In witness whereof, Maker has executed this Promissory Note by its authorized representative.

X  *James Massa*                               Dated this 16TH day of April, 2019.
Giga Entertainment Media, Inc. ("Maker"),
By its CEO James Massa

**OFFICE OF THE CLERK**
## UNITED STATES BANKRUPTCY COURT
**EASTERN DISTRICT OF KENTUCKY**
**P.O. BOX 1111**
**LEXINGTON, KENTUCKY  40588-1111**

**NATHAN W. LEE**  **TELEPHONE**
**CLERK**  **(859) 233-2608**

DATE:   June 28, 2019

TO:   John C. Nimmer
      1429 South Grandview Avenue, Suite 8
      Papillion, Nebraska 68046-5783

RE:   Case No. 19-51291

      We acknowledge receipt of your recent correspondence and it has been scanned into the case record.  We are not permitted to give legal advice.  Judges assigned to bankruptcy cases sit as an impartial party and can only address issues brought before the court in the form of a pleading. You may want to seek the counsel of an attorney regarding this matter.