UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

GIGA ENTERTAINMENT MEDIA, INC.

CASE NO. 19-51291
CHAPTER 7

DEBTOR

---

**MOTION FOR ORDER: (A) AUTHORIZING SALE OF ASSETS PURSUANT TO
11 U.S.C. § 363 AND (B) ESTABLISHING SALE AND BIDDING PROCEDURES,
APPROVING NOTICE OF SALE, AND SETTING SALE HEARING DATE
("Sale Motion")**

---

Comes James D. Lyon, as Trustee (the "Trustee") of the Bankruptcy Estate of Giga Entertainment Media, Inc. (the "Debtor") and, pursuant to 11 U.S.C. §§ 105(a), 363(b), (f) and (m), and Fed. R. Bankr. P. 2002, 6004, 9006 and 9014, hereby moves the Court for authority to sell substantially all of the Debtor's assets (other than the SELFEO Software Code (as defined below) and other specifically excluded assets of the estate), free and clear of liens, claims, interests and encumbrances. In conjunction with its request, the Trustee also moves the Court to enter an order establishing sale and bidding procedures, approving a notice of sale, and setting a sale hearing date. In support of its Motion, the Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1.     On June 27, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2.     This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

3.      The Debtor is a Nevada corporation which maintains its principal place of business in

Lexington, Kentucky.  Accordingly, and as determined by the Court in its Order Denying Motion to

Transfer Venue entered on September 19, 2019 [ECF No. 83], venue for the Debtor's Chapter 7 case

is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.      After extensive negotiations, the Trustee has reached an agreement with GLB2019,

LLC (the "Proposed Buyer" or "Purchaser") as embodied in the form of the proposed asset purchase

agreement attached hereto as Exhibit A (the "APA") for the purchase of substantially all of the

Debtor's assets expressly as set forth therein. The APA terms have been agreed upon by the Trustee

and the Proposed Buyer and will be executed by the Proposed Buyer in substantially the same form

as attached hereto, and the Trustee will separately file the APA executed by the Proposed Buyer with

the Court as soon as the Trustee receives the same.

## TERMS OF THE PROPOSED SALE

### THE ASSET PURCHASE AGREEMENT[1]

**A.      The Assets**

5.      Subject to approval and the submission of any higher or better offers, the Trustee

seeks approval of a sale on the terms of the APA.  Pursuant to the APA, the Proposed Buyer would

acquire the following assets of the Debtor as of the Closing:

(a)      all claims, causes of actions, and rights to recovery under Chapter 5 of the
Bankruptcy Code, applicable local, state, federal or international law, regulation, rule
or other authority (including, but not limited to shareholder derivative claims and
breach of fiduciary duty claims), whether or not listed as an asset in the Debtor's
bankruptcy schedules;

---

[1] The following description of the terms of the APA is intended solely to provide a brief overview thereof, and to
highlight material terms and provisions. Parties should refer to the APA for such complete and detailed terms thereof. In
the event of any inconsistencies between such summary and the APA, the latter shall govern. In addition, all capitalized
terms not defined herein shall have the meaning given to them in the APA.

2

(b)  all books, records, documents and electronic media containing information of any type related to the Claims, *except* for any (i) books and records that the Seller is required by Law or contract to retain, including, without limitation, financial statements, and corporate or other entity filings; (ii) legal entity, minute books, stock ledgers, corporate seals, stock certificates and similar materials of the Debtor; and (iii) documents exclusively relating to the Excluded Assets Section 2.2 of the APA;

(c)  all equipment (including office equipment), fixtures, and furnishings;

(d)  any and all internet domain names registered to the Debtor, and any promotional materials;

(e)  to the extent assignable, all rights of the Debtor under non-disclosure or confidentiality, non-compete, non-solicitation or similar agreements with any employees and agents of the Trustee or with third parties, *except* for any such rights of the Trustee to the extent pertaining exclusively to any Excluded Assets Section 2.2 of the APA;

(f)  to the extent owned by or subject to the control of the Debtor, all Equity Interests in the Debtor; and

(g)  to the extent transferable and to the extent primarily related to the Purchased Assets, the full benefit of all representations, warranties, guarantees, indemnities, undertakings, certificates, covenants, agreements and all security therefor received by the Debtor in connection with the Purchased Assets;

(collectively, the "Assets" or "Purchased Assets").

6.  The proposed purchase price for the Assets is $20,000.00.

**B.  Excluded Assets**

7.  Section 2.2 of the APA specifically sets forth other assets of the Debtor which are being excluded from the sale, including but not limited to the software social media product code for SELFEO 3.1, and any prior or subsequent versions of said software, as well as the registered trademarks for SELFEO and Immerse Yourself (collectively, "SELFEO Software Code"). See Section 2.2 of the APA for a more detailed listing of Excluded Assets.

**C.  Closing and Termination of the APA**

3

8.      The closing of the purchase and sale of the Purchased Assets (the "Closing") shall

take place via electronic exchange of closing documents and signature pages.

9.      Section 4.4 of the APA sets forth the instances in which the APA may be terminated.

Among other things, the parties may mutually agree to terminate the APA or the APA may be

terminated as follows:

(a)     by Purchaser or the Trustee, if the Closing shall not have occurred by the close of
        business on the date that is the earlier of (i) fifteen (15) days after the date on which
        the Sale Order is entered and (ii) December 31, 2019 (such date, the "Termination
        Date");

(b)     by mutual written consent of the Trustee and Purchaser;

(c)     by Purchaser, if there shall be an inaccuracy in any representation or warranty of the
        Seller, or a breach by of any covenant or agreement contained in this Agreement,
        which inaccuracy or breach would result in a failure of a condition set forth in
        Section 9.1 or 9.3 and which inaccuracy or breach cannot be cured or has not been
        cured by the earlier of (i) 15 Business Days after the giving of written notice by
        Purchaser to the Trustee of such breach and (ii) one Business Day prior to the
        Termination Date;

(d)     by the Trustee, if there shall be a inaccuracy in any representation or warranty of
        Purchaser, or a breach by Purchaser of any covenant or agreement contained in this
        Agreement, which would result in a failure of a condition set forth in Section 9.2 or
        9.3 and which breach cannot be cured or has not been cured by the earlier of (i) 15
        Business Days after the giving of written notice by the Trustee to Purchaser of such
        breach and (ii) one Business Day prior to the Termination Date;

4

(e)     by the Trustee or Purchaser if there shall be in effect an Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement, it being agreed that Purchaser and Trustee shall consult in good faith to determine whether the Trustee shall appeal any adverse determination which is not non-appealable (and, in the event such appeal is pursued, the Trustee agree to pursue such appeal with reasonable diligence) unless and until Purchaser elects to terminate this Agreement in accordance with the terms hereof;

(f)     by Purchaser, if (i) the Bidding Procedures in this Agreement are not approved by the Bankruptcy Court on or before November 15, 2019, (ii) if the Bidding Procedures are not followed by Seller, or (iii) the Sale Order has not been entered by December 16, 2019; and

(g)     by Purchaser or the Trustee, if (1) the Trustee consummates an Alternative Transaction or (2) Purchaser is not the Successful Bidder at the conclusion of any Auction.

## USE OF PROCEEDS

10.     Ultimately, the resulting sale proceeds received from the Proposed Buyer or such other party who submits the highest or otherwise best offer or offers at the conclusion of the Auction, will be utilized to satisfy the costs and expenses of administering the Debtor's bankruptcy case as approved by the Court with remaining proceeds distributed to the Debtor's creditors and/or interest holders in accordance with the Bankruptcy Code.  Neither the APA, nor the proposed Sale Order, dictate how the Trustee or the Estate must utilize any of the Sale proceeds, other than to provide that all liens shall attach thereto to the same extent and priority as such liens attached to the Assets prior to the Closing.

## BIDDING PROCEDURES

11.     The Proposed Buyer has consented to participate in an auction as the initial bidder or "stalking horse," subject to certain terms and conditions.  Such terms and conditions include certain provisions related to bidding protections (collectively, the "Bidding Procedures") in favor of

5

Proposed Buyer. The Trustee believes that the Bidding Protections are appropriate under the

circumstances, balancing (i) the Trustee's interest in having a baseline minimum price, in order to

ensure the highest and best net result for the Estate with (ii) protecting the substantial investment

made and to be made by the Proposed Buyer in entering into the APA.

12.     The Bidding Procedures requested for Court approval are: that the minimum

incremental addition to any subsequent bids at the Auction be at least $1,000.00 and Competing

Bidders shall provide proof of financial ability, and deposit in advance, sufficient funds to pay a

subsequent bid in full.  The Trustee further requests that in the event the Proposed Buyer's bid is not

the highest and best offer at the Auction, the Court approve payment to the Proposed Buyer of a

break-up fee in the amount of $5,000.00 to be paid as an administrative expense of the Estate.

## PROPOSED SALE PROCEDURES

13.     The sale of the Assets pursuant to the APA is subject to higher or better offers. The

Trustee proposes the following procedures to maximize the benefits of the proposed sale for the

Debtor's creditors and other stakeholders (the "Sale Procedures"):

(a)     In order to participate in the sale process, a person interested in acquiring the Purchased Assets must first deliver to the Trustee: (i) an executed non-disclosure and confidentiality agreement that is satisfactory to the Trustee; (ii) a statement and other factual support demonstrating to the Trustee's reasonable satisfaction (i) the identity of each Person that will be bidding for the Purchased Assets, (ii) the terms of any such participation, (iii) if any entity has been formed for the purpose of acquiring the Purchased Assets, the parties that will bear liability for any breach by such entity, and the financial capacity of such parties to satisfy such liability; and, that the Person has a *bona fide* interest in acquiring the Purchased Assets; and (iii) preliminary proof by the Person of its financial capacity to close a proposed Sale Transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Person, the adequacy of which the Trustee will determine;

(b)     A "Competing Bidder" is any Person who fully complies with the requirements of section (a) directly above to the satisfaction of the Trustee.

6

Additionally, the Purchaser shall automatically be deemed a Competing Bidder;

(c)     On or before November 29, 2019, the Trustee shall disclose the identity of any Competing Bidders to Purchaser, and is authorized (but not required) to disclose proof of any Competing Bidder's financial capacity to Purchaser;

(d)     Competing Bidders, if any, shall have through and including December 6, 2019 to conduct due diligence in respect to the Purchased Assets, and any information the Trustee provides to a Competing Bidder shall be made available to Purchaser simultaneously;

(e)     Competing bids, if any, must (i) be in an amount in excess of the Purchase Price and the Break-Up Fee; (ii) be in writing and received by Trustee on or before 5:00 p.m. (ET) on Monday, December 9, 2019 (the "Bid Deadline"); (iii) be accompanied by a signed asset purchase agreement clearly disclosing any changes from the terms of the APA, and which does not alter the definition of the Purchased Assets; (iv) acknowledge and agree that the Purchased Assets are being sold "as-is, where-is"; (v) be irrevocable; and, (vi) be accompanied by proof that the full amount of the competing bid has been deposited with either Trustee or counsel for the Competing Bidder;

(f)     In the event the Trustee receives one or more Competing Bids by the Bid Deadline, the shall conduct an auction (the "Auction"), to be conducted at a location designated by the Trustee on December 10, 2019, and Trustee shall seek Bankruptcy Court approval of the highest and best bid at the Bankruptcy Court's December 12, 2019 hearing date. Competing Bidders designate a representative to attend the Auction in person, who shall have full authority to approve any subsequent bids and decide any issues which may arise during the Auction. At the start of the Auction, the Trustee shall disclose the highest and best bid to the Competing Bidders and solicit additional bids. Subsequent bids shall be at least $1,000 more than the prior highest bid, and Competing Bidders shall provide proof of financial ability to pay a subsequent bid in full upon request of Trustee. Trustee may decline to accept bids from any Competing Bidder who does not provide proof of financial ability to fully pay a bid, in his sole discretion. Upon conclusion of the bidding, the Trustee shall announce the identity of the Bidder and amount of the Successful Bid to all Competing Bidders. Upon conclusion of the Auction and proof of ability to fully pay the Success Bid, but no later than December 11, 2019, the Trustee shall file a Report of Auction and request to approve the Sale with the Bankruptcy Court.

g.     The Proposed Buyer has consented to participate in the Auction as the initial bidder or "stalking horse" subject to the Bidding Protections; and

h.      If no Qualified Bid (other than Proposed Buyer's) is received by the Bid Deadline, the Proposed Buyer shall be the highest or best Qualified Bid, and the Trustee will seek approval of and authority to consummate the sale contemplated by the APA.

**RELIEF REQUESTED**
**NECESSITY OF THE SALE**

14.     Both prior to and since the filing of this Chapter 7 case, the Trustee has evaluated the Estate and determined that a sale of the Debtor's Assets set forth herein is in the best interests of the Debtor's Estate and creditors.  As such, the Trustee is confident that likely purchasers of the Assets are aware the Trustee is seeking to sell the Assets and that the Sale Procedures will allow for the maximum recovery to the Debtor's Estate and creditors.  Moreover, the Trustee is in need of sufficient funds to appropriately auction the SELFEO Software Code for the benefit of the Debtor's Estate.

15.     The Trustee has evaluated the terms, conditions, benefits and risks associated with the proposed APA, as well as the risks and benefits of other alternatives. The Trustee, in exercising sound business judgment, has concluded that a sale, as set forth in the APA, offers the most advantageous terms and greatest economic benefit to the Debtor's Estate.  Accordingly, the Trustee believes that a prompt sale of the Assets pursuant to 11 U.S.C. § 363 and the terms of the APA is in the best interests of the Debtor, its creditors, and the Estate.  With the funds expected to be realized from the sale set forth herein, the Trustee have the means to sell the SELFEO Software Code through a subsequent sale as approved by the Court.

16.     In addition, the timing of the proposed sale is critical. It is important that the Debtor close on a sale as quickly as possible to generate funds necessary to conduct a sale of the SELFEO Software Code.  In conjunction with the need to close this sale promptly, the Trustee requests that the Court waive the fourteen (14) day stay of order approving a sale, which would otherwise be

8

required by Fed. R. Bankr. P. 6004(h).

17.    The Trustee requests that the Sale Order provide that the buyer has acquired the

Assets in good faith. The Trustee will offer evidence of good faith at the Sale Hearing. The proposed

bid and sale procedures will ensure that the highest and best offer will be obtained.  No "special

treatment" will be afforded any potential purchaser. Therefore, an order that the buyer has acted in

good faith within the meaning of 11 U.S.C. § 363(m) will be appropriate.

18.    The Trustee requests that the Sale Order provide that the sale is free and clear of any

lien, claim, interest, right of setoff or recoupment, or encumbrance which is held by any party, with

all such liens, claims, interests, right of setoff or recoupment, or encumbrance to attach to the

proceeds in the same order of validity, priority and extent as they currently exist.  The sale of the

Assets is appropriately free and clear of all liens, claims, interests, rights of setoff or recoupment, or

encumbrances pursuant to 11 U.S.C. § 363(f) as set forth below, and all asserted liens, claims

interests, rights of setoff or recoupment, or encumbrances of any entity in and to the Assets will

attach to the sale proceeds to the same validity, priority and extent as exist under applicable law

pursuant to 11 U.S.C. § 363(e).

19.    Upon the Closing contemplated by the APA, the buyer will take title to and

possession of the Assets, except as otherwise provided herein, in the APA or the Sale Order, free and

clear of (except as expressly assumed):  (a) any mortgages, security interests, liens or encumbrances

of any kind, including any administrative expenses,  priority claims asserted herein, claims of setoff

and/or recoupment and any ownership claims for any arrangement which is intended as a financing

(and not a true lease); (b) any demands or claims of creditors against the Debtor; and (c) any person

claiming through, by or on behalf of the Debtor, whether such claim, demand, lien or interest be

direct  or  indirect,  known  or  unknown,  or  claiming  that  the  buyer  is  a  successor  or

9

successor-in-interest or pursuant to any other theory.

## THE PROPOSED SALE IS IN THE BEST INTERESTS OF
## THE DEBTOR'S ESTATE, CREDITORS, AND INTEREST HOLDERS

### A.  The Standard

20.     Entry of the Sale Order approving the final sale of the Assets at the conclusion of the

Sale Hearing is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the

Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other

than in the ordinary course of business, property of the estate."

21.     The Court's power to authorize a sale under 11 U.S.C. § 363(b) is to be exercised at

its discretion, utilizing a flexible, case-by-case approach. *In re Baldwin United Corp.*, 43 B.R. 905

(Bankr. S.D. Ohio 1984). The key consideration is the Court's finding that a good business reason

exists for the sale. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986).

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business….Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Stephens Industries, Inc. vs. McClung*, 789 F.2d 386, at 389 (6th Cir. 1986).

22.     Sound business reason exists for selling the Assets. Namely, the maximum value for

the Assets will be obtained by selling them through the APA.  The Trustee believes it would receive

more value through the sale than through a piecemeal liquidation.  Moreover, the Debtor's Estate

does not have sufficient funds to pursue the claims and causes of actions to be conveyed.

23.     As more particularly set forth in the proposed Sale Procedures Order and to ensure

that a maximum recovery to the Debtor's Estate and creditors is obtained, the Trustee will entertain

timely offers from Qualified Bidders. The Trustee believes that the proposed Sale and Bidding

Procedures will enable it to maximize the value of the Assets for all parties in interest.  The Sale and

Bidding Procedures as set forth herein provide interested parties an opportunity to submit competing

offers for the Assets, thus ensuring that the Sale will be effected through an arm's-length transaction.

 Accordingly, the proposed Sale and Bidding Procedures will allow the highest and best recovery of

the Assets for the Debtor's Estate and creditors.  The Trustee believes that the universe of parties

likely interested in the Purchased Assets is comprised of those parties who are already actively

involved in this litigation.

### B.  The Proposed Sale Satisfies the Requirements of 11 U.S.C § 363(f)

24.     Section 363(f) of the Bankruptcy Code authorizes the sale of property under

11 U.S.C. § 363(b) to be free and clear of interests in such property held by an entity if:

(a)     Applicable non-bankruptcy law permits a sale of such property free and
        clear of such interests;

(b)     Such entity consents;

(c)     Such interest is a lien and the price at which such property is to be sold is
        greater than the aggregate value of all liens on such property;

(d)     Such interest is in bona fide dispute; or

(e)     Such entity could be compelled, in a legal or equitable proceeding, to
        accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

A debtor need only satisfy one of the requirements set forth in 11 U.S.C. § 363(f) to justify approval of a sale free and clear of liens and interests. *Michigan Employment Security Commission v. Wolverine Radio Co.,* 930 F.2d 1132, at 1147, n. 24 (6th Cir. 1991). The Debtor believes that the Sale satisfies one or more of these conditions for each party with an interest in the Assets because it does not appear any entity claims an interest in the Purchased Assets.

### C.  The Proposed Sale and Purchase Would Be in Good Faith

25.     Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under [Bankruptcy Code Section 363(b) or (c)] of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

26.     The terms of the APA were negotiated at arm's length, without collusion, and in good faith. Upon information and belief, the Proposed Buyer is not an insider of the Debtor.

27.     Furthermore, the Proposed Buyer and the Trustee each were represented by separate experienced professionals, helping to ensure the sale process has been fair to date and will continue to be so, and that the APA was negotiated, proposed, and entered into by the Trustee and the Proposed Buyer without collusion, in good faith, and at arm's length.

### D.  Cause Exists to Approve Bidding Procedures

28.     Sellers of assets often employ bidding procedures in order to encourage bids.  The Trustee believes the Bidding Procedures herein are fair and reasonable in amount, particularly in view of the Proposed Buyer's efforts to date and the risk to the Proposed Buyer of being used as a "stalking horse."  The establishment of such protections is within the discretion of the Court.  *See Matter of Gould,* 977 F.2d 1038 (7th Cir. 1992).

29.     The Bidding Procedures represent the reasonable business judgment of the Trustee with respect to what is both commercially reasonable and necessary as an incentive to advance the sale process.  They are the product of extended good faith and arm's-length negotiations between the Trustee and the Proposed Buyer.  The Proposed Buyer has to date made the highest definitive offer for the Assets; however, its bid is contingent upon the Court's approval of the Bidding Procedures. Furthermore, the Trustee believes these procedures will likely benefit the Debtor's Estate by encouraging competitive bidding.

### FORM AND MANNER OF NOTICE AND OPPORTUNITY TO OBJECT

30.     The Trustee further seeks Court approval of the method of service and form of  Notice of Sale (the "Sale Notice"). A copy of the proposed Sale Notice is attached hereto and incorporated herein as Exhibit B.  Upon approval by the Court, the Trustee proposes to serve the Sale Notice upon all potentially interested parties and/or purchasers known to the Trustee, which includes all shareholders of the Debtor as set forth in the Debtor's corporate records, via electronic mail only in order to conserve the limited resources of the Debtor's Estate.

31.     The Trustee requests, in accordance with Fed. R. Bankr. P. 2002(a)(2), that this Court (a) schedule the Sale Hearing on December 12, 2019, and (b) establish December 11, 2019 at 12:00 p.m. (EST), as the deadline for objecting to the sale of the Assets.

32.     In addition, and in accordance with Fed. R. Bankr. P. 9014, the Trustee requests that

this Court order that objections, if any, to the sale must: (a) be filed with the Court; (b) comply with

the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and (c) be served upon

the Trustee, counsel for the Trustee and counsel for the Proposed Purchaser.

## CONCLUSION

33.     The Trustee submits that the sale of the Assets is appropriate and in the best interests

of the Debtor, the Estate, and the creditors of the Debtor. Moreover, the Sale and Bidding Procedures

will allow the Trustee to sell the Assets for the overall benefit of the Estate.

**WHEREFORE,** the Trustee respectfully requests that this Court: (i) approve the Sale

Procedures Order; (ii) authorize the Trustee to execute the Asset Purchase Agreement; (iii) at the

conclusion of Sale Hearing, enter a Sale Order in substantially the form to be tendered prior to the

hearing of this Motion, granting the Trustee authority to sell the Assets to a Qualified Bidder whose

offer is accepted at the sale free and clear of all liens, claims, interests, rights of setoff  recoupment,

or encumbrances; and (iv) grant the Trustee such other and further relief as this Court deems just and

appropriate under the circumstances.

## NOTICE

Notice is hereby given that the foregoing shall be brought on for hearing before the United

States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Third Floor,

Lexington, Kentucky, on November 6, 2019, at the hour of 11:00 a.m. (EST), or as soon thereafter as

counsel may be heard.

Respectfully submitted,

STOLL KEENON OGDEN PLLC

/s/ Adam M. Back

14

Adam M. Back, KY Bar No. 91003
Jessica L. Middendorf, KY Bar No. 94740
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Phone: (859) 231-3000
adam.back@skofirm.com
jessica.middendorf@skofirm.com

COUNSEL FOR THE CHAPTER 7
TRUSTEE


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF system and served upon all parties registered to receive notices of same, and was also served via electronic mail to all shareholders of the Debtor as set forth in the Debtor's corporate records, on this 30th day of October, 2019.

/s/ Adam M. Back
COUNSEL FOR THE CHAPTER 7
TRUSTEE

123717.164814/8068908.2