**ASSET PURCHASE AGREEMENT**

**AMONG**

**JAMES D. LYON, TRUSTEE OF THE BANKRUPTCY ESTATE**

**OF GIGA ENTERTAINMENT MEDIA, LLC,**

**AND**

**GLB2019, LLC**

**Dated as of October 29, 2019**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ............................................................................................ 3

    1.1    Certain Definitions ................................................................................. 3

    1.2    Other Definitional and Interpretive Matters ........................................ 6

ARTICLE II PURCHASE AND SALE OF ASSETS; ASSUMPTION OF LIABILITIES ......... 7

    2.1    Purchase and Sale of Assets ................................................................. 7

    2.2    Excluded Assets .................................................................................... 7

    2.3    Excluded Liabilities ............................................................................. 8

ARTICLE III CONSIDERATION ................................................................................... 8

    3.1    Purchase Price ...................................................................................... 8

ARTICLE IV CLOSING AND TERMINATION ................................................................ 8

    4.1    Closing Date .......................................................................................... 8

    4.2    Deliveries by the Sellers ....................................................................... 9

    4.3    Deliveries by Purchaser ........................................................................ 9

    4.4    Termination of Agreement .................................................................... 9

    4.5    Procedure Upon Termination .............................................................. 10

    4.6    Effect of Termination ......................................................................... 10

    4.7    Break-Up Fee ...................................................................................... 10

ARTICLE V REPRESENTATIONS AND WARRANTIES OF SELLERS ............................ 10

    5.1    Authorization of Agreement ............................................................... 11

    5.2    Title to Purchased Assets; Sufficiency of Assets ............................... 11

    5.5    Litigation ............................................................................................ 11

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF PURCHASER ..................... 11

    6.1    Organization and Good Standing ........................................................ 11

    6.2    Authorization of Agreement ............................................................... 11

    6.3    Litigation ............................................................................................ 12

    6.5    Financial Capability ........................................................................... 12

ARTICLE VII BANKRUPTCY COURT MATTERS .......................................................... 12

    7.1    Sale Approval Process

    7.2    Competing Bids ................................................................................... 12

    7.3    Bid and Auction Procedures ............................................................. 143

    7.4    Adequate Bankruptcy Court Filings ................................................... 15

    7.5    Purchaser Deposit ............................................................................... 14

ARTICLE VIII COVENANTS ....................................................................................... 14

8.1      Access to Information .......................................................................................... 14
8.2      Preservation of Records ...................................................................................... 14

ARTICLE IX CONDITIONS TO CLOSING ............................................................................ 15

9.1      Conditions Precedent to Obligations of Purchaser ............................................ 15
9.2      Conditions Precedent to Obligations of the Sellers ........................................... 15
9.3      Conditions Precedent to Obligations of Purchaser and the Sellers .................... 16
9.4      Frustration of Closing Conditions....................................................................... 16

ARTICLE XI TAXES ................................................................................................................ 16

10.1    Transfer Taxes .................................................................................................... 16
10.2    Cooperation ......................................................................................................... 17

ARTICLE XI MISCELLANEOUS ........................................................................................... 17

11.1    Expenses ............................................................................................................. 17
11.2    Injunctive Relief.................................................................................................. 17
11.3    Submission to Jurisdiction; Consent to Service of Process ................................ 18
11.4    WAIVER OF RIGHT TO TRIAL BY JURY.................................................... 18
11.5    Entire Agreement; Amendments and Waivers ................................................... 18
11.6    Governing Law ................................................................................................... 19
11.7    Notices ................................................................................................................ 19
11.8    Severability ......................................................................................................... 19
11.9    Binding Effect; Assignment................................................................................ 20
11.10  Counterparts........................................................................................................ 20
11.11  No Interpretation Against Drafter ...................................................................... 20

**SCHEDULE**

5.3      Litigation

**EXHIBIT**

A      Form of Bill of Sale

## ASSET PURCHASE AGREEMENT

**ASSET PURCHASE AGREEMENT**, dated as of October __, 2019 (as amended, supplemented, amended and restated or otherwise modified from time to time, this "Agreement"), by and among James D. Lyon, Trustee (the "Trustee" or "Seller") of the bankruptcy estate of Giga Entertainment Media, LLC, a Nevada limited liability company (the "Debtor"), and GLB2019, LLC, a Delaware limited liability company ("Purchaser").

## RECITALS

WHEREAS, on June 27, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Title 7 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), Case No. 19-51921 (the "Bankruptcy Case");

WHEREAS, the Seller is the duly appointed Trustee in the Debtor's Bankruptcy Case with authority to administer the assets of the Debtor's bankruptcy estate;

WHEREAS, subject to the terms and conditions hereof, the Trustee desires to sell, transfer and assign to Purchaser, and Purchaser desires to purchase, acquire and assume from the Seller, all of the Purchased Assets;

WHEREAS, the Trustee has determined that a sale of the Purchased Assets is necessary to maximize value and it is advisable and in the best interests of the Debtor's bankruptcy estate and the beneficiaries of such estate to consummate the transactions provided for herein and has approved this Agreement;

WHEREAS, the transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated (in the event of an auction) only if Purchaser is the Successful Bidder; and

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements hereinafter contained, the Parties hereby agree as follows:

ARTICLE I

DEFINITIONS

1.1     Certain Definitions.

For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

"Agreement" has the meaning set forth in the Preamble hereto.

"Alternative Transaction" means a sale of the Purchased Assets to a Person or Persons other than Purchaser or an Affiliate of Purchaser pursuant to the Auction.

"Auction" shall mean the auction as contemplated by the Bidding Procedures set forth in Section 7.3.

"Avoidance Actions" means all rights, lawsuits, claims, rights of recovery, objections, causes of action, avoidance actions and other similar rights of any Seller arising under or pursuable through Chapter 5 of the Bankruptcy Code (whether or not asserted as of the Closing Date) and all proceeds thereof.

"Bid Procedures" has the meaning set forth in Section 7.3.

"Break-Up Fee" has the meaning set forth in Section 4.7.

"Business Day" means any day of the year other than a Saturday, Sunday or a day on which national banking institutions in New York, New York are required or authorized to close.

"Closing" has the meaning set forth in Section 4.1.

"Closing Date" has the meaning set forth in Section 4.1.

"Debtor" has the meaning set forth in Preamble hereto.

"Documents" means all files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, ledgers, journals, title policies, customer lists, supplier lists, stationery, forms, labels, regulatory filings, data, operating data and plans, technical documentation (specifications, functional requirements, operating instructions and procedures, logic manuals, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, catalogs, flyers, pamphlets, web pages, art work, photographs, etc.), lists, and particulars of customers and suppliers, marketing methods and procedures, any other technical, industrial and commercial information and techniques in any tangible form and other similar materials owned or used by any Seller or held for use in connection with the Business, in each case, whether or not in electronic form.

"Equity Interests" means, with respect to the Debtor, (i) capital stock of, partnership interests, membership interests or other equity interests in, such Person, (ii) securities or other rights exercisable, convertible into or exchangeable for shares of capital stock, partnership interests, membership interests, voting securities or other equity interests in such Person and (iii) options, warrants, calls, commitments or other rights to acquire any of the foregoing described in clauses (i) and (ii), whether fixed or contingent, matured or unmatured, contractual, legal, equitable or otherwise.

"Excluded Assets" has the meaning set forth in Section 2.2.

"Final Order" means an order of any Bankruptcy Court, any court of competent jurisdiction or other Governmental Body (i) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely

filed, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing thereon; (ii) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (iii) as to which no stay is in effect; provided, however, that, with respect to an order issued by the Bankruptcy Court, the filing or pendency of a motion under Federal Rule of Bankruptcy Procedure 9024 or Federal Rule of Civil Procedure 60 shall not cause an order not to be deemed a "Final Order" unless such motion shall be filed within fourteen (14) days after the entry of the order at issue.

"Law" means any law, statute, code, ordinance, rule, regulation or binding interpretation of a governmental body.

"Legal Proceeding" means any claim, liability, action, complaint, suit, citizen suit, litigation, arbitration, appeal, petition, demand, inquiry, hearing, proceeding, investigation, enforcement, audit, warning or other dispute, whether judicial, quasi-judicial, regulatory, civil, criminal, administrative or otherwise, at law or in equity, by or before any governmental body or any third person and any appeal from any of the foregoing; provided, however, that the Bankruptcy Cases shall not be considered a "Legal Proceeding".

"Liability" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body or other entity.

"Petition Date" has the meaning set forth in the Recitals hereto.

"Purchase Price" has the meaning set forth in Section 3.1(a).

"Purchased Assets" has the meaning set forth in Section 2.1.

"Purchaser" has the meaning set forth in the Preamble hereto.

"Purchaser Deposit" has the meaning set forth in Section 7.5.

"Sale Motion" means a motion seeking (i) the entry of the Sale Order and (ii) approval of the Bid Procedures and this Agreement.

"Sale Order" means, if Purchaser is the Successful Bidder, a Final Order of the Bankruptcy Court in form and substance reasonably acceptable to Purchaser and the Seller approving this Agreement and all of the terms and conditions hereof, and approving and authorizing the Seller to consummate the transactions contemplated hereby and providing, among other things (i)  that Purchaser has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code; and (ii) that this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions.

5

"Seller Documents" means any agreement, document, instrument or certificate contemplated by this Agreement or which has been or is to be executed by any Seller in connection with the consummation of the transactions contemplated by this Agreement.

"Seller" has the meaning set forth in the Preamble hereto.

"Successful Bidder" has the meaning set forth in Section 7.3.

"Termination Date" has the meaning set forth in Section 4.4(a).

"Transfer Taxes" has the meaning set forth in Section 10.1.

1.2    Other Definitional and Interpretive Matters.  Unless otherwise expressly provided herein, for purposes of this Agreement, the following rules of interpretation shall apply:

Calculation of Time Period.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

Dollars.  Any reference in this Agreement to "$" shall mean U.S. dollars.

Exhibits/Schedules.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

Gender and Number.  Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

Headings.  The provision of a Table of Contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

Herein.  Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

Including.  The word "including" or any variation thereof means "including, without limitation," and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

# ARTICLE II

## PURCHASE AND SALE OF ASSETS

2.1    <u>Purchase and Sale of Assets</u>.  Pursuant to Sections 105 and 363 of the Bankruptcy Code and on the terms and subject to the conditions set forth in this Agreement and (if Purchaser is the Successful Bidder) the Sale Order, at the Closing, Purchaser shall purchase, acquire and accept from the Seller, and the Seller shall sell, transfer, assign, convey and deliver to Purchaser all of the Sellers' right, title and interest, in, to and under the Purchased Assets free and clear of all Liens to the extent set forth in this Agreement and the Sale Order.  "<u>Purchased Assets</u>" shall mean, as of the Closing Date, all of the properties, assets, rights and interests of the Seller (excluding the Excluded Assets), including the following:

(a)    all claims, causes of actions and rights to recovery under Chapter 5 of the Bankruptcy Code, applicable local, state, federal or international law, regulation, rule or other authority (including, but not limited to shareholder derivative claims and breach of fiduciary duty claims), whether or not listed as an asset in the Debtor's bankruptcy schedules (the "Claims");

(b)    all books, records, documents and electronic media containing information of any type related to the Claims (the "Records");

(c)    all equipment (including office equipment), fixtures, and furnishings;

(d)    any and all internet domain names registered to the Debtor, and any promotional materials;

(e)    to the extent assignable, all rights of the Debtor under non-disclosure or confidentiality, non-compete, non-solicitation or similar agreements with any employees and agents of the Seller or with third parties, other than any such rights of the Seller to the extent pertaining exclusively to any Excluded Assets;

(f)    to the extent owned by or subject to the control of the Debtor, all Equity Interests in the Debtor; and

(g)    to the extent transferable and to the extent primarily related to the Purchased Assets, the full benefit of all representations, warranties, guarantees, indemnities, undertakings, certificates, covenants, agreements and all security therefor received by the Debtor in connection with the Purchased Assets;

2.2    <u>Excluded Assets</u>.  Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Purchaser, and the Seller shall retain all right, title and interest to, in and under the Excluded Assets.  "<u>Excluded Assets</u>" shall mean each of the following assets of the Sellers:

7

(a)     Any checking or deposit accounts of the Debtor existing as of the Petition Date, and any deposit accounts established by the Trustee in connection with this Bankruptcy Case;

(b)     The software social media product code for SELFEO 3.1, and any prior or subsequent versions of said software, as well as the registered trademarks for SELFEO and Immerse Yourself; and

(c)     any (i) books and records that the Seller is required by Law or contract to retain, including, without limitation, financial statements, and corporate or other entity filings; (ii) legal entity, minute books, stock ledgers, corporate seals, stock certificates and similar materials of the Debtor; and (iii) documents exclusively relating to the Excluded Assets.

2.3     <u>Excluded Liabilities</u>.  Purchaser will not assume or be liable for any Liabilities or other obligations of the Debtor or Seller, or any predecessor or Affiliate of the Debtor, of any nature whatsoever, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated or otherwise ( the "<u>Excluded Liabilities</u>").

## ARTICLE III

## CONSIDERATION

3.1     <u>Purchase Price</u>.

(a)     In consideration of the sale of the Purchased Assets to Purchaser and the other undertakings set forth herein, upon the terms and subject to the conditions set forth in this Agreement, the purchase price (the "<u>Purchase Price</u>") for the Purchased Assets shall be Twenty Thousand and no/100 ($20,000.00) Dollars.

(b)     Upon the Seller's acceptance of this Agreement, Purchaser shall deposit the Purchase Price in the escrow account of counsel for Purchaser, and provide proof thereof to Seller.

(c)     On the Closing Date, Purchaser shall pay the Purchase Price to Seller with immediately available funds.

## ARTICLE IV

## CLOSING AND TERMINATION

4.1     <u>Closing Date</u>.  The closing of the purchase and sale of the Purchased Assets (the "<u>Closing</u>") shall take place via electronic exchange of closing documents and signature pages on the date that is no less than one (1) Business Day and no greater than three (3) Business Days after entry of the Sale Order.  Unless otherwise agreed by the Parties in writing, the Closing shall be deemed effective and all right, title and interest of the Seller to be acquired by Purchaser hereunder shall be considered to have passed to Purchaser as of 12:01 a.m. (Eastern time) on the Closing Date.

4.2     Deliveries by the Seller.   At the Closing, the Seller shall deliver to Purchaser:

(a)     a duly executed Bill of Sale substantially in the form of Exhibit A hereto;

(b)     the Purchased Assets and the Records; and

(c)     all other documents, instruments or writings of conveyance and transfer, in form and substance reasonably acceptable to Purchaser, as may be necessary or reasonably desirable to convey the Purchased Assets to Purchaser.

4.3     Deliveries by Purchaser.   At the Closing, Purchaser shall deliver the Purchase Price to the Seller.

4.4     Termination of Agreement.   This Agreement may be terminated prior to the Closing as follows:

(a)     by Purchaser or the Seller, if the Closing shall not have occurred by the close of business on the date that is the earlier of (i) fifteen (15) days after the date on which the Sale Order is entered and (ii) December 31, 2019 (such date, the "Termination Date");

(b)     by mutual written consent of the Seller and Purchaser;

(c)     by Purchaser, if there shall be an inaccuracy in any representation or warranty of the Seller, or a breach by of any covenant or agreement contained in this Agreement, which inaccuracy or breach would result in a failure of a condition set forth in Section 9.1 or 9.3 and which inaccuracy or breach cannot be cured or has not been cured by the earlier of (i) 15 Business Days after the giving of written notice by Purchaser to the Seller of such breach and (ii) one Business Day prior to the Termination Date;

(d)     by the Seller, if there shall be a inaccuracy in any representation or warranty of Purchaser, or a breach by Purchaser of any covenant or agreement contained in this Agreement, which would result in a failure of a condition set forth in Section 9.2 or 9.3 and which breach cannot be cured or has not been cured by the earlier of (i) 15 Business Days after the giving of written notice by the Seller to Purchaser of such breach and (ii) one Business Day prior to the Termination Date;

(e)     by the Seller or Purchaser if there shall be in effect an Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement, it being agreed that Purchaser and Seller shall consult in good faith to determine whether the Seller shall appeal any adverse determination which is not non-appealable (and, in the event such appeal is pursued, the Seller agree to pursue such appeal with reasonable diligence) unless and until Purchaser elects to terminate this Agreement in accordance with the terms hereof;

(f)     by Purchaser, if (i) the Bidding Procedures in this Agreement are not approved by the Bankruptcy Court on or before November 15, 2019, (ii) if the Bidding

9

Procedures are not followed by Seller, or (iii) the Sale Order has not been entered by December 16, 2019; and

(g) by Purchaser or the Seller, if (1) the Seller consummates an Alternative Transaction or (2) Purchaser is not the Successful Bidder at the conclusion of any Auction.

4.5 <u>Procedure Upon Termination</u>. In the event of termination of this Agreement by Purchaser or the Seller, or both, pursuant to <u>Section 4.4</u> hereof, written notice thereof shall forthwith be given to the other Party or Parties, and this Agreement shall terminate, and the purchase of the Purchased Assets hereunder shall be abandoned, without further action by Purchaser or the Seller.

4.6 <u>Effect of Termination</u>. In the event that this Agreement is validly terminated pursuant to <u>Section 4.4</u>, (i) all further obligations of the Parties under this Agreement shall terminate, except that the obligations in this <u>Section 4.6</u>, <u>Section 4.7</u> (Break-Up Fee) and <u>Article XI</u> shall survive and (ii) each Party shall pay the fees, costs and expenses incurred by it in connection with this Agreement, except as provided in clause (i) above or <u>Article XI</u>. Notwithstanding the foregoing, the termination of this Agreement shall not relieve any Party to this Agreement of liability for its willful and material breach of this Agreement. For purposes of this Agreement, "willful and material breach" means a material inaccuracy or breach of any material representation, warranty or covenant or other agreement set forth in this Agreement that is a consequence of an act or failure to act by or on behalf of the breaching Party with knowledge that the taking of such act or failure to take such act would, or would reasonably be expected to, result in a breach of this Agreement.

4.7 <u>Break-Up Fee</u>. Subject to the approval of the Bankruptcy Court, if this Agreement is terminated pursuant to <u>Section 4.4(g)</u>, Purchaser shall be entitled to be paid an amount equal to five thousand dollars ($5,000) (the "<u>Break-Up Fee</u>") if the Seller consummates an Alternative Transaction. The Break-Up Fee shall be paid by Seller or the Successful Bidder to Purchaser within three (3) Business Days after the consummation of such Alternative Transaction. Purchaser acknowledges that this Agreement may be subject to overbid at an Auction in the Bankruptcy Case, and that, in the event this Agreement is terminated pursuant to <u>Section 4.4(g)</u>, the Seller shall have no liability to Purchaser under this Agreement other than to pay the Break-Up Fee as set forth above; <u>provided</u>, <u>however</u>, that nothing in this sentence shall relieve the Seller from any liability for breach of this Agreement prior to its termination.

ARTICLE V

REPRESENTATIONS AND WARRANTIES OF SELLER

Purchaser specifically acknowledges and agrees to the following with respect to the representations and warranties of the Seller:

A. Purchaser has conducted its own due diligence investigations of the Purchased Assets or has waived its right to conduct such due diligence.

B.  Except as expressly provided, Seller make no representations or warranties with respect to the Purchased Assets or the Excluded Assets.

Except as otherwise disclosed to Purchaser in the Schedules hereto, the Seller represents and warrants to Purchaser as follows:

5.1     Authorization of Agreement.  Except for such authorization as may be required by the Bankruptcy Court, the Seller has all requisite power, authority and legal capacity to execute and deliver this Agreement and has all requisite power, authority and legal capacity to execute and deliver the Seller Documents, to perform his respective obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Seller Documents will be at or prior to the Closing, duly and validly executed and delivered by the Seller and this Agreement constitutes, and each of the Seller Documents when so executed and delivered will constitute, legal, valid and binding obligations of the Seller enforceable against such Seller in accordance with their respective terms, subject to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.2     Title to Purchased Assets; Sufficiency of Assets.  The Seller has good, valid, marketable and undivided title to the Purchased Assets free and clear of all Liens.  Purchaser will be vested with good title to such Purchased Assets, free and clear of all Liens, to the extent set forth in the Sale Order and, subject to the entry of the Sale Order, Purchaser will be vested to the fullest extent permissible under Section 363(f) of the Bankruptcy Code with good valid, marketable and undivided title to the Purchased Assets free and clear of all Liens.

5.3     Litigation.  Except as set forth on Schedule 5.3, there are no Legal Proceedings pending or, to the Knowledge of the Seller, threatened by or against any Seller before any Governmental Body.

ARTICLE VI

REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to the Sellers that:

6.1     Organization and Good Standing.  Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite power and authority to carry on its business as now conducted, except where the failure to have such power and authority would not have a material adverse effect on the ability of Purchaser to consummate the transactions contemplated by this Agreement.

6.2     Authorization of Agreement.  Purchaser has full power and authority to execute and deliver this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement or to be executed by Purchaser in connection with the consummation of the transactions contemplated hereby and thereby (the "Purchaser Documents"), and to consummate the transactions contemplated hereby and thereby.  The

execution, delivery and performance by Purchaser of this Agreement and each Purchaser Document have been duly authorized by all necessary action on behalf of Purchaser and no other action on the part of Purchaser is necessary to authorize the execution and delivery of this Agreement and the Purchaser Documents by Purchaser and the consummation of the transaction contemplated hereby and thereby by Purchaser.  This Agreement has been, and each Purchaser Document will be at or prior to the Closing, duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each Purchaser Document when so executed and delivered will constitute, the legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity.

6.3    Litigation.  There are no Legal Proceedings pending or, to the knowledge of Purchaser, threatened against Purchaser, or to which Purchaser is otherwise a party before any Governmental Body, expected to have a material adverse effect on the ability of Purchaser to perform its obligations under this Agreement or to consummate the transactions hereby. Purchaser is not subject to any Order of any Governmental Body except to the extent the same would not reasonably be expected to have a material adverse effect on the ability of Purchaser to perform its obligations under this Agreement or to consummate the transactions contemplated hereby.

6.4    Financial Capability.  Purchaser at the Closing will have sufficient funds available to pay the Purchase Price and any expenses incurred by Purchaser in connection with the transactions contemplated by this Agreement.

ARTICLE VII

BANKRUPTCY COURT MATTERS

7.1    Sale Approval Process.  Seller shall seek Bankruptcy Court approval of this Agreement and the Bid Procedures as promptly as possible, but no later than November 15, 2019.

7.2    Competing Bids/Auction.    This Agreement and the transactions contemplated hereby are subject to Seller's right and ability to consider higher and/or otherwise better competing bids with respect to the Purchased Assets, pursuant to the Bid Procedures below, and to conduct an auction if Competing Bids are received. Seller agrees to seek approval of the Bid Procedures from the Bankruptcy Court on or before November 15, 2019. In accordance with the Bid Procedures, the Seller has the right to, and may cause his representatives to, (a) initiate contact with any Person (in addition to Purchaser and its representatives) in connection with any sale or other disposition of the Purchased Assets; (b) respond to any request for information or due diligence inquiry to any such Person; and (c) furnish any information with respect to, or assist or participate in, or facilitate in any other manner, any effort or attempt by any Person to do or seek to do any of the foregoing.

7.3    <u>Bid and Auction Procedures</u>. The Seller agrees that in the event any other Person expresses an interest in acquiring the Purchased Assets, the following terms and conditions shall apply:

(a)    Any Person expressing an interest in acquiring the Purchased Assets must execute any non-disclosure and confidentiality agreement as may be required by Seller;

(b)    Any Person expressing an interest in acquiring the Purchased Assets must provide the Seller with a statement and other factual support demonstrating to the Seller's reasonable satisfaction (i) the identity of each Person that will be bidding for the Purchased Assets, (ii) the terms of any such participation, (iii) if any entity has been formed for the purpose of acquiring the Purchased Assets, the parties that will bear liability for any breach by such entity, and the financial capacity of such parties to satisfy such liability; and, that the Person has a *bona fide* interest in acquiring the Purchased Assets;

(c)    Any Person expressing an interest in acquiring the Purchased Assets must provide the Seller with preliminary proof by the Person of its financial capacity to close a proposed Sale Transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Person, the adequacy of which the Seller will determine;

(d)    Any Person who fully complies with the requirements of Section 7.3(a), (b) and (c) to the satisfaction of the Seller shall be deemed a Competing Bidder. The Purchaser shall automatically be deemed a Competing Bidder;

(e)    On or before November 29, 2019, the Seller shall disclose the identity of any Competing Bidders to Purchaser, and is authorized (but not required) to disclose proof of any Competing Bidder's financial capacity to Purchaser;

(f)    Competing Bidders, if any, shall have through and including December 6, 2019 to conduct due diligence in respect to the Purchased Assets, and any information the Seller provides to a Competing Bidder shall be made available to Purchaser simultaneously;

(g)    Competing bids, if any, must (i) be in an amount in excess of the Purchase Price and the Break-Up Fee; (ii) be in writing and received by Seller on or before 5:00 p.m. (ET) on Monday, December 9, 2019 (the "Bid Deadline"); (iii) be accompanied by a signed asset purchase agreement clearly disclosing any changes from the terms of this Agreement and which does not alter the definition of the Purchased Assets; (iv) acknowledge and agree that the Purchased Assets are being sold "as-is, where-is"; (v) be irrevocable; and, (vi) be accompanied by proof that the full amount of the competing bid has been deposited with either Seller or counsel for the Competing Bidder;

(h)    In the event the Seller receives one or more Competing Bids by the Bid Deadline, the Seller shall conduct an auction (the "Auction"), to be conducted at a location designated by the Seller on December 10, 2019, and Seller shall seek Bankruptcy Court approval of the highest and best bid at the Bankruptcy Court's December 12, 2019 hearing date.

Competing Bidders designate a representative to attend the Auction in person, who shall have full authority to approve any subsequent bids and decide any issues which may arise during the Auction. At the start of the Auction, the Seller shall disclose the highest and best bid to the Competing Bidders and solicit additional bids. Subsequent bids shall be at least $1,000 more than the prior highest bid, and Competing Bidders shall provide proof of financial ability to pay a subsequent bid in full upon request of Seller.  Seller may decline to accept bids from any Competing Bidder who does not provide proof of financial ability to fully pay a bid, in his sole discretion. Upon conclusion of the bidding, the Seller shall announce the identity of the Bidder and amount of the Successful Bid to all Competing Bidders. Upon conclusion of the Auction and proof of ability to fully pay the Success Bid, but no later than December 11, 2019, the Seller shall file a Report of Auction and request to approve the Sale with the Bankruptcy Court.

7.4     <u>Bankruptcy Court Filings</u>.  The Seller shall use reasonable best efforts to make any filings, take all actions and obtain any and all relief from the Bankruptcy Court that is necessary or appropriate to consummate the transactions contemplated by this Agreement as promptly as practicable following the date hereof.  Each Party agrees that it will promptly take such actions as are reasonably requested by any other Parties to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of demonstrating that Purchaser is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and that the Purchase Price was not controlled by an agreement in violation of Section 363(n) of the Bankruptcy Code.  In the event the entry of the Sale Order shall be appealed, the Seller shall use his reasonable best efforts to defend such appeal unless and until Purchaser elects to terminate this Agreement in accordance with the terms hereof.

7.5     <u>Purchaser Deposit</u>.  A deposit (the "<u>Purchaser Deposit</u>") shall be paid by Purchaser via a deposit into the escrow account of counsel for Purchaser in an amount equal to 100% of the Purchase Price within three (3) Business Days after execution of this Agreement, to be supplemented with any additional amounts needed to equal 100% of any increase in the Purchase Price if Purchaser is the successful bidder at any auction; <u>provided</u>, <u>however</u>, (i) if Purchaser is not the Successful Bidder at the conclusion of the Auction, the Purchaser Deposit shall be cancelled within one (1) Business Day following the Auction.

## ARTICLE VIII

## COVENANTS

8.1     <u>Access to Information</u>.  The Seller agrees that, prior to the Closing Date, Purchaser shall be entitled, through its officers, employees and representatives (including, without limitation, legal advisors and accountants), to make such investigation of the Purchased Assets and such examination of the books and records of the Business as is reasonable (and reasonably requested) and to make extracts and copies of such books and records.  Any such investigation and examination shall be conducted in a reasonable manner during regular business hours upon reasonable advance notice and under reasonable circumstances and shall be subject to any applicable restrictions under applicable Law.

8.2     <u>Preservation of Records</u>.

(a)      The Seller and Purchaser agree that each of them shall preserve and keep the books and records held by them relating to the Purchased Assets for a period of three (3) months from the Closing Date and during such period shall make such books and records available to the other as may be reasonably required by such party in connection with, among other things, any insurance claims by, Legal Proceedings against or governmental investigations of the Debtor or Purchaser or in order to enable any Party to comply with its obligations under this Agreement or the Bankruptcy Cases.  Each Party shall be entitled to inspect and make copies of any such books and records held by the other Party.  In the event Seller or Purchaser wishes to destroy such books and records before or within three (3) months from the Closing Date, it shall first give 10 days' prior written notice to the other Party and the other Party shall have the right, at their option and expense, upon prior written notice within such 10-day period, to take possession of the records within 10 days after the date of such notice.

(b)      Access pursuant to this <u>Section 8.2</u> shall be afforded by the party in possession of such records, upon receipt of reasonable advance notice, during normal business hours and at the expense of the party seeking such access; <u>provided</u>, <u>however</u>, that (i) any review of such records shall be conducted in such a manner as not to interfere unreasonably with the operation of the business of any party, (ii) no party shall be required to take any action that would constitute a waiver of the attorney-client privilege, and (iii) no party shall be required to supply the other party with any information which such party is under a legal obligation not to supply.

ARTICLE IX

CONDITIONS TO CLOSING

9.1      <u>Conditions Precedent to Obligations of Purchaser</u>.  The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, as of the Closing, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

(a)      the representations and warranties of the Seller shall be true and correct in all material respects at and as of the date hereof and the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date);

(b)      the Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with prior to the Closing Date; and

9.2      <u>Conditions Precedent to Obligations of the Seller</u>.  The obligations of the Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, as of the Closing, of each of the following conditions (any or all of which may be waived by the Seller in whole or in part to the extent permitted by applicable Law, provided that any such waiver does not materially and adversely affect the Seller's estate):

(a)      the representations and warranties of Purchaser shall be true and correct in all material respects at and as of the date hereof and as of the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date); and

(b)      Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date.

9.3      <u>Conditions Precedent to Obligations of Purchaser and the Seller</u>.  The respective obligations of Purchaser and the Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, as of the Closing, of each of the following conditions (any or all of which may be waived by Purchaser and the Seller in whole or in part to the extent permitted by applicable Law):

(a)      there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby, nor shall there be any statute, rule, regulation, Order or other law promulgated, enacted, entered, enforced or deemed applicable to the parties hereto which makes the consummation of the transactions contemplated by this Agreement illegal, void or rescinded or constitutes or imposes any Burdensome Condition; and

(b)      the Bankruptcy Court shall have approved the Bidding Procedures, the Seller shall have complied with the Bidding Procedures, the Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall have become a Final Order.

9.4      <u>Frustration of Closing Conditions</u>.  Neither the Seller nor Purchaser may rely on the failure of any condition set forth in Section <u>9.1</u>, <u>9.2</u> or <u>9.3</u>, as the case may be, if such failure was primarily caused by such Party's failure to comply with any provision of this Agreement.

ARTICLE X

TAXES

10.1      <u>Transfer Taxes</u>.    All sales, use, transfer, real estate transfer (including, without limitation, documentary transfer, deed, fixed asset, stamp and like taxes) and similar taxes and recording charges payable in connection with the consummation of the transactions contemplated by this Agreement (the "<u>Transfer Taxes</u>") shall be borne by Purchaser and any Tax Returns that must be filed in connection with such Transfer Taxes shall be prepared and filed when due by the Party primarily or customarily responsible under the applicable Law for filing such Tax Returns.  A Party filing a Tax Return pursuant to the preceding sentence will use its commercially reasonable efforts to provide such Tax Return to the other Party at least ten (10) Business Days prior to the due date for such Tax Return, and such other Party shall promptly pay to the filing Party an amount equal to its share of any Liability for Transfer Taxes (as described in the preceding sentence) shown as due on such Tax Return at least one (1) Business Day prior

16

to such due date.  The Parties shall reasonably cooperate with each other in any mutually agreeable, reasonable and lawful arrangement designed to minimize any applicable Transfer Taxes.

10.2   Cooperation.  The Seller, on the one hand, and Purchaser, on the other hand, will provide each other with such cooperation and information as either of them may reasonably request of the other in connection with filing any Tax Return, amended Tax Return or claim for refund, determining a liability for Taxes or a right to a refund of Taxes, or participating in or conducting any audit or other proceeding in respect of Taxes; provided, however, that nothing herein shall require Purchaser to provide information that is privileged if the disclosure is reasonably expected to result in the loss of such privilege.  Any information obtained under this paragraph shall be kept confidential, except (i) as may be otherwise necessary in connection with the filing of Tax Returns or claims for refund or in conducting an audit or other proceeding or defending any Tax claim, or (ii) with the consent of Seller or Purchaser, as the case may be.  The Seller agrees (i) to retain all books and records with respect to Tax matters pertinent to the Business and the Purchased Assets relating to any Pre-Closing Tax Period until expiration of the statute of limitations (and, to the extent notified by Purchaser, any extensions thereof) of the respective taxable periods, and to abide by all record retention agreements entered into with any taxing authority and (ii) to give the Purchaser reasonable written notice prior to transferring, destroying or discarding any such books and records and, if the Purchaser so requests, shall allow the Purchaser to take possession of such books and records (other than any information that the Seller reasonably believes to be privileged).

ARTICLE XI

MISCELLANEOUS

11.1   Expenses.  Except as otherwise provided in this Agreement and whether or not the transactions contemplated hereby are consummated, Seller and Purchaser shall each bear their own respective expenses (including all compensation and expenses of counsel, financial advisors, consultants, actuaries and independent accountants) incurred in connection with the negotiation and execution of this Agreement and the consummation of the transactions contemplated hereby.

11.2   Injunctive Relief.  The Parties acknowledge and agree that (i) irreparable damage would occur in the event that any of the provisions of this Agreement are not performed in accordance with their specific terms or are otherwise breached or threatened to be breached, and (ii) damages and/or remedies at law would be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, each of the Parties shall be entitled to seek injunctive relief (without the posting of any bond or other security) with respect to any such breach, including without limitation specific performance of such covenants, promises or agreements or an order enjoining Purchaser from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in this Agreement.  The Parties' right to equitable relief, including specific performance and injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Agreement. The rights set forth in this Section 11.2 shall be in addition to any other rights which the Parties may have at law or in equity in connection with this Agreement.  If any action,

17

suit or proceeding is brought by a Party to enforce this Agreement against another Party, the Party such action, suit or proceeding is brought against shall waive the defense that there is an adequate remedy at law and agrees not to assert that specific performance, injunctive and other equitable remedies are unenforceable, violate public policy, invalid, contrary to Law or inequitable for any reason. The right to specific performance, injunctive and other equitable remedies is an integral part of the transactions contemplated by this Agreement and without that right, none of the Parties would have entered into this Agreement.

        11.3    <u>Submission to Jurisdiction; Consent to Service of Process</u>.    Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to interpret and/or enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court, including to the entry by the Bankruptcy Court of final orders in any such proceedings, and shall receive notices at such locations as indicated in <u>Section 11.7</u> hereof; <u>provided, however,</u> that if the Bankruptcy Case has been closed and not reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Kentucky and any appellate court from any thereof, for the resolution of any such claim or dispute.  The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

        11.4    <u>WAIVER OF RIGHT TO TRIAL BY JURY</u>.  EACH PARTY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, MATTER OR PROCEEDING REGARDING THIS AGREEMENT OR ANY PROVISION HEREOF.

        11.5    <u>Entire Agreement; Amendments and Waivers</u>.  This Agreement (including any schedules and exhibits hereto) represent the entire understanding and agreement among the Parties with respect to the subject matter hereof.  This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the Party against whom enforcement of any such amendment, supplement, modification or waiver is sought.  No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any Party, shall be deemed to constitute a waiver by the Party taking such action of compliance with any representation, warranty, covenant or agreement contained herein.  The waiver by any Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

11.6    Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky applicable to contracts made and performed in such State.

11.7    Notices.   All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by electronic mail (with written confirmation of transmission) or (iii) one Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses (or to such other address as a Party may have specified by notice given to the other Party pursuant to this provision):

If to the Seller, to:

James D. Lyon, Trustee
100 East Vine Street, Suite 404
Lexington, KY 40507
E-mail:  jdlyonlaw@aol.com

With a copy (which shall not constitute notice) to:

Stoll Keenon Ogden PLLC
300 West Vine Street
Lexington, KY 40507
Attention:  Adam Back
               Jessica Middendorf
E-mail:  adam.back@skofirm.com
            jessica.middendorf@skofirm.com

If to Purchaser, to:

GLB2019, LLC
723 Central Ave.
Lexington, KY 40502
Attention:  James Massa
E-mail:

With a copy (which shall not constitute notice) to:

DelCotto Law Group PLLC
200 North Upper Street
Lexington, Kentucky 40507
Attention:  Dean A. Langdon
E-mail: dlangdon@dlgfirm.com

11.8    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or

legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

11.9    <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a Party.  No assignment of this Agreement or of any rights or obligations hereunder may be made by either the Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other Parties and any attempted assignment without the required consents shall be void and without effect; <u>provided</u>, <u>however</u>, that Purchaser may assign its rights or obligations under this Agreement to one or more of its Affiliates without the consent of any other Party.  No assignment of any obligations hereunder shall relieve the Parties of any such obligations.  Upon any such permitted assignment, the references in this Agreement to any such permitted assignor shall apply to any such permitted assignee unless the context otherwise requires.

11.10   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

11.11   <u>No Interpretation Against Drafter</u>.  This Agreement is the product of negotiations among the Parties, each of which is represented by legal counsel, and any rules of construction relating to interpretation against the drafter of an agreement shall not apply to this Agreement and are expressly waived by each Party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

**<u>SELLER</u>**

**JAMES D. LYON, TRUSTEE**

By:  _____

Name:

Title:

**<u>PURCHASER</u>**

**GLB2019, LLC**


By:  _____
    Name:
    Title: