UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

GIGA ENTERTAINMENT MEDIA, INC.

DEBTOR

CASE NO. 19-51291
CHAPTER 7

## OBJECTION TO APPROVAL OF SALE

Comes GLB2019, LLC ("GLB2019"), by counsel, pursuant to this Court's Sale Procedures Order [ECF No. 115], and hereby objects to approval of the sale as proposed by the Trustee's Motion for Order Authorizing Sale of Assets Pursuant to 11 U.S.C. § 363 (the "Sale Approval Motion") [ECF No. 122] and Chapter 7 Trustee's Report of Auction Sale ("Report of Auction") [ECF No. 121]. In support of its Objection, GLB2019 states as follows:

### INTRODUCTION

GLB2019 served as the stalking horse bidder for the proposed sale of certain assets (the "Purchased Assets") from the Debtor's estate. After extensively negotiating the terms of a sale process, and after the Court modified the sale process in response to an objection by the Equity Security Holders[1], the Trustee held an auction for the Purchased Assets on December 17, 2019. However, the Equity Security Holders failed to fully comply with the terms and conditions of the Sale Procedures Order and the Asset Purchase Agreement (which was incorporated by reference) by failing to provide proof of financial ability to the Trustee as required. Consequently, the Equity Security Holders were able to bid for the Purchased Assets in an amount above and

---

1 The Equity Security Holders are David Shutvet, Riva Wilkins, Gary Nerlinger, Patricia Gilchrist, Lyle Gillman, Bob Barnard, Arthur Mellon and William Freeman. They were also the only other competing bidder at the Auction.

beyond their ability to pay, and the bid does not comply with the Court-ordered procedures for a fair, competitive sale.

## RELIEF SOUGHT

GLB2019 seeks to have the Court void any competing bids of the Equity Security holders which did not comply with the Sale Procedures Order, and approve a sale to GLB2019, which fully complied with the terms and conditions of the Sale Procedures Order. Alternatively, GLB2019 seeks have the Auction declared null and void and allow the Trustee to solicit new offers from any potential purchasers (including the Debtors' shareholders and creditors), subject to Court approval of any new offers and proposed sale procedures. Assuming the Trustee would not impose a requirement to prove financial ability upon potential bidders, restarting the sale process from scratch would allow GLB2019 adequate time to determine if its current members and any other interested parties would participate in an auction under revised procedures.

## BACKGROUND

1. After negotiating terms with GLB2019, the Trustee filed his Motion for Order: (A) Authorizing Sale of Assets Pursuant to 11 U.S.C. § 363 and (B) Establishing Sale and Bidding Procedures, Approving Notice of Sale, and Setting Sale Hearing Date (the "Sale Motion") [ECF No. 88] on October 30, 2019. The Equity Security Holders objected [ECF Nos. 92, 104] on numerous grounds, but did not object to the requirements to provide proof of an ability to pay any initial or subsequent bid. After holding an extensive hearing on November 14, 2019, the Court entered its Order (A) Establishing Sale and Bidding Procedures; (B) Approving Notice of Sale; and (C) Setting Sale Hearing Date (the "Sale Procedures Order") [ECF No. 115].

2. According to the Report of Auction, one additional bidder, the Equity Security Holders, qualified as a Competing Bidder under the Sale Procedures Order, due diligence was completed, and the Trustee received one competing bid by the Bid Deadline. Accordingly, the

Trustee conducted an auction beginning at 9:00 a.m. on Tuesday, December 17, 2019 at 100 East Vine Street, Room 529, Lexington, Kentucky. Counsel for the Trustee was also present. GLB2019 was present by counsel and its representative, James Massa. The Equity Security Holders were present by counsel and its representative, Gary Nerlinger.[2]

3. Relevant to this Objection, the Sale Procedures Order required that a competing bid "be accompanied by proof that the full amount of the competing bid has been deposited with either Trustee or counsel for the Competing Bidder" [ECF No. 115, p. 4, ¶ 8(vi)]. The Sale Procedures Order further provides that at any auction "…Competing Bidders **shall provide** proof of financial ability to pay a subsequent bid in full upon request of [the] Trustee" and "Upon conclusion of the Auction **and proof of ability to fully pay** the Successful Bid, but no later than 12: P.M. on December 18, 2019, the Trustee shall file a Report of Auction and request to approve the Sale with the Bankruptcy Court." [ECF No. 115, pp. 9-10, ¶ 9] (emphasis added).

4. During the course of the auction, counsel for GLB2019 questioned the Equity Security Holder's ability to pay the amount of their bid, and counsel for the Equity Security Holders unequivocally represented that the only funds actually on hand were those sufficient to pay the initial competing bid.[3] The Trustee declined to request any additional proof from the competing bidder, and accepted a final bid of $76,000 from the competing bidder without any offer of proof from the Equity Security Holders that they had an ability to comply with the bid. Upon information and belief, the Equity Security Holders have solicited funds to pay the amount of their bid not only from Equity Security Holders, but other shareholders of the Debtor after the Auction concluded. GLB2019 had proof of funds actually on deposit in counsel's escrow

---

[2] Mr. Nerlinger was convicted of 16 counts of federal mail fraud in 1987. *U.S. v. Nerlinger,* 862 F.2d 967 (2d Cir. 1988). In 2018, the SEC brought a civil enforcement action against the Debtor, Mr. Nerlinger and others, alleging multiple fraudulent acts in connection with the Debtors' prior efforts to fund the Debtor. Mr. Nerlinger consented to entry of a judgment on December 20, 2018. A copy of the initial complaint and Order are attached as Exhibit A.
[3] GLB2019 has requested a copy of the auction recording, but has not received one as of the filing of this Objection.

account to support its bids, but was not willing to bid in excess of those funds due to the requirements of the Sale Procedures Order.

5. The Report of Auction also fails to comply with the Sale Procedures Order, as it does not reflect that the Equity Security Holders timely provided the Trustee with proof of ability to pay the final bid before the Report of Auction was filed. To the contrary, it establishes that the Equity Security Holders utterly failed to comply with the Court's requirement that they provide "proof of ability to fully pay the Successful Bid" prior to the deadline for filing the Report of Auction.

## **ARGUMENT**

6. The detailed terms and conditions contained in the Sale Procedures Order (and the APA incorporated by reference) were negotiated with an eye towards protecting the Debtors' estate from improper or unqualified bids. In light of the history of mail fraud and securities violations by the Equity Security Holders representative and the unfounded threats and allegations circulated to the Debtors' shareholders by the "Shareholders Action Committee", many of which are in the Court's record [ECF Nos. 15, 95-2, 95-3, 108], GLB2019 suspected that the Equity Security Holders would attempt to acquire the Purchased Assets without the financial ability to do so.

7. Accordingly, GLB2019 made repeated requests to the Trustee to obtain verification of the competing bidders' ability to satisfy not only its initial bid, but any subsequent bids. However, the Equity Security Holders provided only representations of counsel regarding the ability to pay an initial bid. Further, the Equity Security Holders continued to flout the Sale Procedures Order at the Auction by continuing to bid after their counsel represented on the record that they had no funds other than those sufficient to pay their initial bid, but would have to solicit such funds from the Equity Security Holders. While GLB2019 encouraged the Trustee to

require such proof, he elected not to do so. This failure to comply with the terms and conditions of the Sale Procedures Order should result in the disapproval of the proposed sale to the Equity Security Holders.

8. Even if the Trustee had discretion under the Sale Procedures Order not to require documented proof of an ability to pay the initial bid, or to require proof of ability to pay subsequent bids during the auction, the Sale Procedures Order unequivocally mandates proof of ability to pay a successful bid prior to submitting an Auction Report. The Equity Security Holders and the Trustee have failed to comply with the Order's terms in this regard. The Report of Auction makes no representation and offers no proof that the Equity Security Holders provided proof of ability to fully pay their bid. In fact, Exhibit 3 to the Report of Auction confirms that the Equity Security Holders did not comply with the provisions of paragraph 9 of the Sale Procedures Order, as no proof of ability to pay is offered –only a promise to pay in the future. This should result in disapproval of the sale, and at least preclude the Equity Security Holders from been deemed a "good-faith purchaser" under 11 U.S.C. § 363(m) if the proposed sale is approved.

9. GLB2019 relied upon the terms of the Sale Procedures Order (and incorporated APA) in participating in the sale process and the Auction. It expected a level playing field where each bidder would be required to provide the Trustee with documented proof of an ability to comply with any bids made at the auction. Because GLB2019 complied with the requirements of the Sale Procedures Order and was not willing to bid an amount beyond the funds it had on hand[4], it was prejudiced by the conduct of the Auction, as it faced a bidder who appeared to be willing to bid without limit, and only then seek funds to honor its bid. Had GLB2019 known that

---

4  GLB2019 also obtained the agreement of the Trustee for GLB2019 to include the amount of the break-up fee approved in the Sale Procedures Order, and its allowed administrative claim, in its bid prior to the Auction.

the Trustee was not going to require bidders to comply with the terms of the Sale Procedures Order, it may have sought relief of the Court prior to the auction, withdrawn its bid, or continued bidding at the Auction in a manner as did the Equity Security Holders.

10.     In addition, neither the Report of Auction nor the Sale Approval Motion reference the Trustee's agreement (and Court's approval) of a break-up fee payable to GLB2019 in the event it is not the successful bidder at the auction. GLB2019 does not believe the sale should be approved as a result of the failure of the competing bidder and Trustee to comply with the Sale Procedures Order, but if approved, the Trustee must be required to abide by his agreement to pay GLB2019 a break-up fee, pursuant to Section 4.7 of the APA between the Trustee and GLB2019.

## **CONCLUSION**

GLB2019 relied upon the terms of the Sale Procedures Order and limited its bidding at the Auction to funds it had the ability to pay.  The Equity Security Holders did not, and because the Trustee permitted the Equity Security Holders to continue bidding without proof of financial ability, GLB2019 was prejudiced. The appropriate remedy for the Equity Security Holder's failure to comply with the requirements of the Sale Procedures Order is to void any bids above their ability to pay at the time of the Auction, and approve GLB2019's bid in excess of that amount. Alternatively, the Court should require the Trustee to restart the sale process on such terms and conditions as potential purchasers may propose, and with which the Trustee agrees. Finally, if the proposed sale is approved, the Trustee should be required to pay GLB2019 the Court-ordered break-up fee.

Wherefore, GLB2019 respectfully requests that the Court deny the Trustee's Sale Approval Motion, deem GLB2019's initial bid of $27,000 as the Successful Bid, and direct the Trustee to consummate the sale of the Purchased Assets to GLB2019 pursuant to the terms of the APA.

## NOTICE OF HEARING

Notice is hereby given that the foregoing Objection shall come on for a hearing before the U.S. Bankruptcy Court, Third Floor Courtroom, 100 East Vine Street, Lexington, Kentucky 40507, on Friday, December 20, 2019 at the hour of 11:00 a.m., or as soon thereafter as the parties may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon
Dean A. Langdon, Esq.
KY Bar No. 40104
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile: (859) 281-1179
dlangdon@dlgfirm.com
COUNSEL FOR GLB2019, LLC

## **CERTIFICATE OF SERVICE**

This document has been electronically filed and served via the Court's ECF System on December 19, 2019.

/s/ Dean A. Langdon
COUNSEL FOR GLB2019, LLC

\Pleadings\Sale Objection V3 20191219.doc